– 2175, Ms. Dobin, and Mr. Kennedy – or Ms. Kennedy. Ms. Kennedy. Sorry. Good morning, Judges of the Third Circuit. My name is Andrea Dobin, and I represent Thomas Orr, the Bankruptcy Trustee in the Bankruptcy Proceedings of Paul Rutenberg. Let me start off at the beginning. What is the difference today between a claim that's pre-petition and a claim that comes in post-petition with regard to the equitable disbursement of marital property? What's the difference between pre-petition and post-petition today? Since the 2005 amendments, is your question? Correct. The big differences are two, one being an entitlement to receive a distribution from the bankruptcy estate after assets are liquidated, and the second would be discharge. There's an error made in considering some of those issues with regard to discharge because we need to understand that a claim is a claim is a claim. The definition of claim is consistent throughout the code. So when the argument is made that now that equitable distribution claims are non-dischargeable in a Chapter 7, the distinction between whether they should be deemed pre-petition and non-dischargeable or post-petition and non-dischargeable is irrelevant. That's not entirely true because in a Chapter 13 proceeding, obviously not on the facts before this court today. These are both Chapter 7s, right? Indeed. But since a claim is a claim is a claim, in a Chapter 13 proceeding, equitable distribution claims are dischargeable. So a post-petition equitable distribution claim in a 13 would be non-dischargeable. A pre-petition equitable distribution claim receives a distribution to the extent general and secured creditors receive a distribution in a 13. But in this particular case, this is a 7, what is the difference between pre- and post-petition in light of 523A15? In this particular case, the distinction is whether or not the non-debtor spouse would receive a distribution. That is the sole distinction here. So if it was post-petition, she doesn't get a distribution? If it is post-petition, she does not receive a distribution because she does not get a claim. What does she get? She gets the right to go back to matrimonial court and has access to, in a Chapter 7, understood that post-petition income is not property of the estate, so she can get an allotment of equitable distribution that can be collected from post-petition income. She can get a distribution of non-estate property, meaning exempt property, or under this Court's decision in UHAAS and the Supreme Court precedents, she has the right to retirement accounts. And those assets could be distributed to the non-debtor spouse through equitable distribution in the event that is a post-petition claim. Post-petition, and then pre-petition, she gets what? If it's a pre-petition claim, she would get the right to a distribution to the extent one is made to unsecured creditors as a general unsecured claim, as well as the rights that I described, meaning post-petition recovery from assets that aren't property of the estate, as well as post-petition income. But her claim is, if her claim is non-dischargeable, so she only gets, okay, she only gets to participate to the extent there's $0.10 on the dollar for everybody? Indeed. Okay. Indeed. And understand, for most of these non-debtor spouses, there is also a domestic support obligation, which has a super priority claim under the O5 amendments. That's under A5. Under A5. And under 507A1, she would also, the domestic support obligation would have a super priority claim. Now, in your briefing, you didn't, other than on page, I think your brief table of contents said page 27, but I think it was on page 24, you mentioned 523A15 only in a parenthetical with regard to a bankruptcy case from the Northern District of Illinois. It would help if you let us know, in light of BAPSIPA, what the differences are. Why wasn't that covered in the brief? Because this isn't a dischargeability question. The dischargeability determination, as was appropriately pointed out in both the decision below, as well as in some of the briefs. makes the difference pre- versus post-petition? Obviously, if it's the first question we ask, then it's probably something you should have considered educating us on in the brief. Although it was not an issue below, this isn't an adversary proceeding or has anything, frankly, to do with the discharge. The dischargeability determination really is more of a policy consideration that was referenced also somewhat as a throwaway in Judge Lyons in writing his decision, saying that he believed that the distinction between pre-petition and post-petition was driven primarily by the determination of dischargeability, that because post-petition claims are non-dischargeable, that there was almost a parental kind of position taken by the Code as to non-debtor spouses, so that in order to protect non-debtor spouses, there was a broad swath of post-petition claims, meaning equitable distribution claims would be post-petition in order to protect them from being discharged. There was a suggestion in Judge Lyons' opinion that the 2005 amendments were designed to make that irrelevant, that because equitable distribution would be non-dischargeable regardless of when it arose under the 05 amendments, that that was the functional equivalent of creating a claim. We believe that that's a narrow position to take in light of the fact that although the 05 amendments did make equitable distribution claims non-dischargeable, and recall that the amendment to 815 was not solely to make them non-dischargeable. There was always the possibility that equitable distribution claims would be non-dischargeable. Before the... But 815, I mean, when I first read it, I didn't think it was as broad as it actually is. It is non-dischargeable that if the debt is owed to a spouse, former spouse, in the course of a divorce or separation or in connection with a separation agreement or divorce decree. So you don't even need a divorce decree if it's in the course of a divorce or separation. What you may owe to a former spouse is non-dischargeable. That's pretty broad. I mean, and I don't see a way around the textual reading of that. Let me ask you a question here. What was the property that was at issue between Paul and Candace? It was a business asset. He had a limited partnership interest in a piece of real estate, a garden variety real estate investment. And what were the general terms of the marital settlement agreement? How did it deal with that? Well, the marital settlement agreement was entered into post-petition. Understood. I've not seen it. Okay, you've not seen it. By the time the marital settlement agreement was signed, both Paul and Candace had filed bankruptcy. So at that point, there was no need for them to break up those assets because the asset that was in Paul's estate, to the extent that Candace had a claim to it, it would by then have been an asset in Candace's estate. Right, under 541. Under 541. And Kane, which makes that clear. So, I mean, Ms. Kennedy, you were representing Candace in her proceeding? Is that correct? I'm representing Candace. Okay, got it, got it. So whoever her counsel was, in light of Kane, has to be pretty clear that, okay, we want to make sure that we disclose this. We don't want to have a situation where it's viewed that we're not disclosing an asset under 541. So if she has to disclose that it's an asset under 541, the argument that's been made by Ms. Kennedy is that this really needs to be a claim against, when you look at it from Paul's perspective, against his estate. And you're saying, well, that symmetry doesn't make any sense, but why doesn't that symmetry make any sense? It doesn't make any sense because, first of all, if you look at the Kane decision, the Kane decision says that it's an issue of disclosure and an issue of judicial estoppel. She disclosed the asset and therefore was interested post, after her husband eventually filed, she wanted the right to pursue the claim in her husband's bankruptcy. The question became, was the claim abandoned under 554? Was it properly disclosed such that the automatic abandonment of assets at the closure of a case revested it? Look at it this way. If you're looking at the structure of the bankruptcy code and you got a husband and wife, both in their individual bankruptcy proceedings, and the structure of the code under 541 is that she must declare this as an asset of her estate, her small bankruptcy claim, to the equitable marital distribution. Why then, when you look to the, what is in his estate, does she have a claim? If she has an asset, which is a claim, why in his case is it not a claim under 1015, when it's an extremely broad definition of claim? It is an extremely broad definition of claim, but the case law says that claims are defined by state law. And the state law says she doesn't have a claim. You've got to be careful on that. Property rights are defined under Butner under state law. But claim, the definitional claim, is a federal concept under section 101 of the bankruptcy code. This is not state law. Federal law only borrows from state law for purposes of establishing the property interests that may or may not constitute a claim, right? Indeed. In other words, if I have a property interest in his property in Pennsylvania, well, that's a state law question. That's right. But do I have a claim against a person's bankruptcy estate? That's a federal question. That's why you have the definition of claim in 101. But the definition of claim... Could it be any broader? It could not be any broader, except for the fact that historically there are boundaries. And the reference to Grossman's and the reference to the overturning of Frenville, indeed, Frenville was too narrow. We believe that Grossman's, as applied here, is too broad. Why? Because what you have is a situation where the conduct described in Grossman's to give rise to a claim. It is very easily described in a tort concept, or not easily described, but has  But there is absolutely, there's no language in Grossman's that explicitly limits its application to tort cases? Understood. It has yet to be applied outside of that context. But in fact, if anything, our Grossman's opinion demonstrates that tort claims are only one type of case to which its rationale might be applied. I'm looking at the section that begins B when a claim arises, the second paragraph, and a sentence that says, on the other hand, a broad discharge may disadvantage potential claimants, such as tort claimants. So we have explicitly acknowledged that tort claimants are only one category of people to whom... And even if that were not the case, I mean, you're familiar with the concepts of plausibility for complaints that you make, claims in complaints that you make. Flombley only dealt with antitrust, and yet Iqbal picked up on it and put it onto something else. The concept can expand. And here, this concept is, one can make an argument, is already expansive. The problem that we have here, Judge, is that if you were to expand this to not filed. What you have is a situation where you've got people with rights that remain completely fluid. And I understand my time is up, but I would like to propose... We'll finish that sentence, and then we'll get you back on rebuttal. Well, let me ask something, if I may. Go ahead. Doesn't it seem extremely inequitable that you could have a marriage continue and certain inchoate rights that are statutorily provided for here under New Jersey law and many other states? And no question that there's a right to make an equitable distribution claim, which you've suggested. It may be fluid. It may be, as I've characterized it, it is inchoate. But your reasoning would seriously limit the opportunity of a partner in the marriage to make a claim for her fair share, which is specifically what the equitable distribution provisions of New Jersey matrimonial law here provide. And I'd like to... New Jersey law borrows from equity. Equitable distribution is, by nature and definition, equitable. Doesn't your position work in extremely unequitable, inequitable results? I think we need to be careful about making judgments about which party of the marriage has assets and which one is filing. Because I think that the equities... Filing for what? Because I think when you start talking about the equities of a situation, I can give you hypotheticals that will completely put this on its head. Because the one issue that we have not talked about is the 541A5 180-day look-back. Because if what we have here is the triggering event, which Judge Lyons was not clear in his opinion, what he considered to be the triggering event to give rise to a claim. But let's assume for the purposes of argument that the triggering event is the filing of a complaint for divorce. And that if a complaint for divorce is filed pre-petition, that a claim for equitable distribution will arise pre-petition. Now what you have... Let's assume for this portion of the argument that we're not dealing with the facts in Rutenberg, but because this is a very large issue... What you're saying is we could have the consequences, as you note in your brief, that perhaps if you do an opinion that's too expansive, that the day you get married, you have a claim. And not even that, Judge. But even in a non-collusive situation, what you can have is the creditors of a bankruptcy estate being deprived of significant assets of a non-debtor spouse that would then, because of the 60-day period... Excuse me, the six-month 541A5 case, where those assets become property of the estate, but only if the marital estate is resolved within six months of the settlement. So that you've got a situation where there's uncertainty as to who gets those assets. But part of the uncertainty for counsel to Candace was that counsel wanted to be sure that she or he complied with what this court required in Kane. Let's hear from Ms. Kennedy, and we'll get you back on rebuttal. Good morning, Your Honors. May it please the Court, Erin Kennedy, Foreman, Holt, Elias, and Youngman for Barbara Edwards, the Chapter 7 trustee for Candace Rutenberg. The first question is, do you agree with the analysis of Ms. Dobin as to what the differences are in practical terms between a pre-petition claim and a post-petition right here? No. What is the difference between, if she has a post-petition claim, what does she get? Let's put the pre-petition away for just a moment. Let's go back to the days of Howe. Under, going back to how New Jersey law stood, if she has a pre-petition claim, if she has a pre-petition... Yeah, let's start with post-petition, because let's just say for the moment Howe was still in law, Judge Lyons overruled himself. If she has a post-petition divorce judgment, she gets nothing in terms of a claim in the bankruptcy estate. And I do agree with Ms. Dobin that she would have the right to pursue non- property of the estate to satisfy her equitable distribution claims such as post-petition earnings or other exempt assets such as retirement funds. But she would not have any right in any assets that existed as part of the marriage. For example, if you had a piece of property that was acquired during the marriage, which would be property of the marriage under Carr and under the New Jersey equitable distribution statute, but was titled solely to the name of the husband as the partnership property was in this case, under New Jersey marital law, upon the entry of divorce, the wife would be likely to be of an interest in that property because it was acquired during the marriage and part of the enterprise of the marriage. But in the bankruptcy, what happens is that property totaled solely to the debtor's spouse passes only to his estate. And then you employ the levy and judgment creditor status under 544. So that any claim that the wife might have to that property is junior to the trustee. So the trustee gets all that property in the bankruptcy estate. So what happens is under the current law in New Jersey, the saying that the wife has no interest in marital assets or equitable distribution property until after the divorce judgments entered means all that property stays in the estate and gets distributed to the husband's creditors to the detriment of the wife and the wife is left to chase a bankrupt husband to get any claim out of the equitable distribution. And hopefully gets another job so that she can go after earnings. That's correct. So if it's a pre-petition claim, then what does she get? If it's a claim under 1015. If we say under the facts divorce judgment hasn't been entered and we allow it as a pre-petition claim. In other words, if we affirm Judge Lyons here. Then basically we enter into a scenario as what happens under Second Circuit law and New York law. She would be allowed to have a general and secured claim in the bankruptcy estate and she would share on par with other creditors to the liquidation of the asset. Basically, to my thinking, she's the equivalent of a judgment creditor who hasn't levied. So she doesn't beat the trustee in terms of levying judgment creditor status, but she's still a creditor. She's still owed something by the husband. She just hasn't perfected that judgment. Okay. What about the argument that Ms. Dobin made that if we rule in your favor that we're going to be met with situations down the road where people are claiming that they have inchoate rights when they haven't even begun divorce proceedings. They're just not real happy with each other. They may be separated for a while. And I've got a claim because I'm thinking about getting separated from my husband. Well, actually, I represent some very creative trustees who've tried to put that argument forward from time to time. But I think it's very easy to say that we make the bright line when a matrimonial proceeding is filed. You've already set that standard in Kane saying that it's by virtue of being a matrimonial divorce proceeding that this interest arises. So it's not complicated at all. In fact, I think it's harder in a tort scenario to set a bright line because you have injury, you have connection, and then you have discovery of the harm. Whereas here, if you use the tests of the conduct test plus the contact test, you end up with the filing of the divorce makes the most sense. And in fact, if you look at New Jersey law and you look at the case of VanderWeer, New Jersey law treats marital assets of being defined as of the date the matrimonial complaint is filed, not as of the date divorce is entered. So if a spouse is dissipating assets, we're looking at what assets existed when the complaint was filed, not what assets existed on the date the divorce judgment's entered. So that theory is consistent with existing New Jersey law. And even if we go back and look at Carr, even though Carr found that there was no right to equitable distribution because the spouse died, the court still formed a remedy which gave the wife access to the marital assets. The Carr court struggled to get to what was an equitable result there. They were determined to see that the spouse was not completely disadvantaged. Which makes sense. It's the right result. And I think the thing is, quite honestly, as I was preparing for this argument, I said to one of my partners, if I were matrimonial counsel, the first thing I would do after filing a matrimonial complaint would be to file a lispendence to protect the interest in the property because then you would actually be able to defeat a bankruptcy trustee in this in-between stage that we're talking about. And if you look at the New York cases, I think those cases give rise to that concept. What is your interpretation of BAPSIPA's 523A15? To what extent does the dischargeability extend for a spouse under 523A15? Well, under the new law, all spousal claims are now non-dischargeable. Do you read it as broadly as I read it in my questioning to Ms. Stobin? Yes. It was a bit of a nightmare before they changed the law because you would have a very small window within which to file an objection to discharge. And you have spouses who already have virtually no assets and have depleted a lot of their assets in matrimonial proceedings now having to hire a long and hard for in the matrimonial case. And it didn't make sense to make a distinction between the equitable distribution of assets and the alimony and support. And in fact, what it was doing was it was making matrimonial attorneys work to define all of the allocation in a divorce one way as opposed to another way in order to achieve a good result. Okay. Any further questions? Thank you very much. We'll hear back from Ms. Stobin. Thank you. Ms. Stobin. I have always struggled with the application of Grossman's to these cases simply because the language of Grossman's says that a claim arises when an It's the same struggle, obviously, that Judge Lyons had. And his view is that the concepts that are in Grossman's do apply here, that you don't look to when you have the approval of a claim via Frenville, but now that Frenville is overruled, you look to when the possibility of a claim comes into existence. And here in that case, he views it under the definition of claim, under 101.5 as pre-petition. I mean, in effect, he's overruling himself from his 2004 decision and how. Indeed, which is why this case became such a surprise to, frankly, the bar and myself when it was rendered. Speaking personally, I have to give Judge Lyons a lot of credit. It's tough to overrule yourself. Indeed. Well, I've done it plenty of times. I've been wrong a lot more often than you have. No, not that. But he didn't just overrule himself. He overruled some of the other judges who have strongly held beliefs otherwise that the – I have no idea what Judge Winfield would have done had she had the issue before her in light of Grossman's as opposed to Frenville. Although in the Berlingeri case, the Frenville part of her opinion had very little to do with it. Historically, the decisions of Howell and Berlingeri and some of the other opinions that hold similarly was reliant upon the state law. Admittedly, the court is now concerned that the definition of claim should be deemed more broadly. But I do believe that, for example, as the Miller Court pointed out, which is a remarkable opinion in its own right from the Northern District of Indiana, that judge struggled with a similar decision and came out in favor of a bright-line test such as the appellee's belief that the bright-line test should be the entry of judgment of divorce because everything else is too subject to both dispute and manipulation. And in light of the number of marriages that end in divorce, shouldn't the greater possibility be that even happily married spouses should have an equal distribution claim in the spouse of their other partner? You brought that up, and that can be dealt with, but that's not the particular facts that we have before us. The facts we have before us are really similar to Berlingeri and Howell. And has the landscape changed? It's really, in effect, it's Grossman's, and then you go to the next case. This is the next case. Indeed. And we certainly realized that at the time that we had this case decided in the bankruptcy court. Ms. Kennedy and I acknowledged the fact that we would be standing before the court today with this argument. And we believe that the rights of creditors, which are protected under the Bankruptcy Code, should mandate that there be an equivalence among creditors and that, as currently stands, the Rutenberg decision below does not create the equivalence that is required by the Bankruptcy Code. Thank you. Thank you to both counsel for very well presented arguments. We'll take the matter under advisement. And I would ask that counsel get together with the clerk's office and have a transcript prepared of this oral argument and split the cost, if you would, please. Thank you very much. Thank you.